John M. HUFF, et al., Respondents,

v.

DEWEY & LEBOEUF, LLP, et al., Appellants.

No. WD 72176.

Missouri Court of Appeals, Western District.

April 26, 2011.

624

Thomas B. Weaver, for Respondents.

Robert T. Adams, for Appellant.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, JOSEPH M. ELLIS, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Judge.

Dewey & LeBoeuf, LLP, appeals from the dismissal of its counterclaim in a legal malpractice action filed against it by John M. Huff, the Director of the Missouri Department of Insurance, Financial Institutions, and Professional Regulations ("MDI"), acting as Liquidator for General American Mutual Holding Company ("GAMHC"), and by Albert Riederer, as Special Deputy Liquidator for GAMHC. For the following reasons, the appeal is dismissed, and the cause is remanded to the trial court for further proceedings.

On August 10, 1999, due to a liquidity crisis, General American Life Insurance Company ("GALIC") was placed under Administrative Supervision by Keith Wenzel, then Director of MDI,[1] pursuant to the Director's authority under § 375.1160, RSMo 1994. GALIC was wholly-owned by GenAmerica, which, in turn, was wholly-

---

1. Hereafter, reference to the "Director" means the individual serving as the Director of MDI at the relevant time as numerous individuals have filled that position from August 10, 1999, to the present.

owned by GAMHC. "As a result, the order placing GALIC under Administrative Supervision automatically made GAMHC a party to the Administrative Supervision." *State ex rel. Dewey & LeBoeuf, LLP v. Crane*, 332 S.W.3d 224, 227 (Mo.App. W.D. 2010). "Dewey & LeBoeuf served as counsel for GAMHC and/or for some of its subsidiaries immediately prior to the Director's assumption of control of GAMHC in the Director's capacity as a Receiver under the Missouri Insurer's Supervision, Rehabilitation, and Liquidation Act, RSMo [1994] §§ 375.1150 to 375.1246."[2] *Id.* at 226.

On September 17, 1999, the Director filed a Verified Petition for Rehabilitation in the Circuit Court of Cole County against GAMHC pursuant to § 375.1165, RSMo 1994, requesting a court order naming the Director as Rehabilitator of GAMHC. That same day, the circuit court entered its order appointing the Director as the Rehabilitator.

Subsequently, Dewey & LeBoeuf recommended to the Director and GALIC that GenAm and its subsidiaries, including GALIC, be sold to resolve the liquidity crisis. Bids were solicited, and the circuit court eventually approved a sale of GenAm to The Metropolitan Life Insurance Company ("MetLife") on November 10, 1999.

The proceedings involving GAMHC evolved into liquidation, and on the Director's motion, the Director was appointed as Liquidator. The Director eventually asked the court to appoint Albert Riederer as a special deputy liquidator pursuant to § 375.1176.2,[3] and that request was granted.[4] The Liquidators initiated several law-suits against various third parties that resulted in settlements yielding millions of dollars to the GAMHC insolvency proceedings.

In May 2009, the Liquidators filed the present legal malpractice action in the Circuit Court of Cole County against Dewey & LeBoeuf. The Liquidators asserted that Dewey & LeBoeuf had acted negligently, committed acts of legal malpractice, and violated its fiduciary duties while representing GALIC during the liquidity crisis that arose in 1999. The Liquidators claimed that Dewey & LeBoeuf negligently failed to warn GALIC about the financial hazards related to GALIC's funding arrangements which precipitated the liquidity crisis. They further alleged that Dewey & LeBoeuf improperly advised GALIC to seek administrative supervision from MDI in connection with the liquidity crisis. The petition claimed that, as a result of pursuing administrative supervision from MDI, GALIC was placed in temporary administrative supervision and GAMHC was placed into rehabilitation (a form of receivership). The Liquidators claimed that, during the receivership process, Dewey & LeBoeuf improperly advised GAMHC to sell GenAm, GALIC's parent company and GAMHC subsidiary, to MetLife in a deal that undervalued GALIC.

Dewey & LeBoeuf filed a timely answer and counterclaim to the Liquidators' petition. As affirmative defenses, Dewey & LeBoeuf asserted failure to state a cause of action, collateral estoppel and/or res judicata, equitable estoppel, lack of standing, release, accord and satisfaction,

---

2. Dewey & LeBoeuf LLP is the successor to LeBoeuf, Lamb, Greene & MacRae L.L.P., which actually provided the representation at that time, but for easy of understanding, we will simply refer to the law firm as Dewey & LeBoeuf throughout this opinion.

3. This and all subsequent statutory references are to RSMo 2000 unless otherwise noted.

4. Hereafter, Huff and Riederer will be referred to collectively as "the Liquidators."

intervening cause, statute of limitations, contributory negligence, comparative negligence, assumption of the risk, and failure to state a claim for punitive damages. In its counterclaim, Dewey & LeBoeuf sought a declaratory judgment declaring that the Liquidator's lacked standing or authority to pursue the action against it and dismissing the Liquidator's petition.

After a change of venue was granted and the cause was transferred to Boone County, a motion to dismiss the counterclaim was granted, but Dewey & LeBoeuf was given leave to file an amended counterclaim. In its first amended counterclaim, Dewey & LeBoeuf sought a declaration that (1) the Liquidators were acting in excess of their statutory powers in bringing their claims against Dewey & LeBoeuf, (2) the liquidators lacked standing to bring their claims against Dewey & LeBoeuf, and (3) the Liquidators' petition should be dismissed. Dewey & LeBoeuf also sought injunctive and other equitable relief to prevent any further action in the Liquidators' current action or any future action.

In response, the Liquidators filed a motion to dismiss Dewey & LeBoeuf's amended counterclaim, asserting that, pursuant to statute, any action against GAMHC or the Liquidators could only be brought in the court in which the Liquidators were appointed. The Liquidators claimed that the trial court lacked subject matter jurisdiction to entertain Dewey & LeBoeuf's amended counterclaim and that, pursuant to § 375.1188, only the liquidation court had authority to act on the petition. The Liquidators further argued that the relief sought by Dewey & LeBoeuf would conflict with prior orders entered by the liquidation court.

On January 29, 2010, the trial court entered its "Order and Judgment" dismissing Dewey & LeBoeuf's amended counterclaim "for lack of subject matter jurisdic-

tion." The trial court further determined, "pursuant to Rule 74.01(b), that there is no just reason for delay in entering judgment against Dewey & LeBoeuf LLP on its First Amended Counterclaim for lack of subject-matter jurisdiction and that this judgment is final for purposes of appeal."

In its sole point on appeal, Dewey & LeBoeuf claims that the trial court erred in dismissing its counterclaim for lack of subject matter jurisdiction because the trial court clearly had subject matter jurisdiction over the counterclaim under *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 251 (Mo. banc 2009). In that case, the Missouri Supreme Court held that "Missouri courts recognize two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction." *Id.* at 252. The breadth of the circuit court's subject matter jurisdiction is set forth in article V, section 14 of the Missouri Constitution, which states that circuit court's "have original jurisdiction over all cases and matters, civil and criminal." *State ex rel. Office of Public Counsel v. Public Serv. Comm'n,* 326 S.W.3d 868, 871 (Mo.App. W.D.2010) (emphasis omitted).

On appeal, the Liquidators readily concede, as they must, that Dewey & LeBoeuf's counterclaim was a civil action brought under the declaratory judgment act and that the trial court clearly had subject matter jurisdiction over that claim in accordance with the teachings of *Wyciskalla*. *See Id.* Instead, the Liquidators challenge the trial court's certification of this matter for appeal as erroneous and contend that this court should dismiss the appeal because the order appealed from is not a final judgment. In the alternative, the Liquidators assert that the trial court's dismissal of the counterclaim should be sustained based upon the trial court's lack of authority to act on the amended counterclaim pursuant to § 375.670 and

§ 375.1188, which provide that claims against the Liquidators must be brought in the Liquidation court.

This court acquires authority to review a case upon the issuance of a "final judgment" from a court below. *§ 512.020; Rule 74.01.* "A final, appealable judgment disposes of all issues and parties in the case, leaving nothing for future determination." *Langston v. Missouri Bd. of Probation & Parole*, 325 S.W.3d 562, 565 (Mo. App. W.D.2010). Accordingly, "[a]s a general rule, for the purpose of appeal, a judgment must dispose of all parties and all issues in the case and leave nothing for future determination." *West v. Sharp Bonding Agency, Inc.*, 327 S.W.3d 7, 11 n. 5 (Mo.App. W.D.2010). "If the trial court's judgment is not final, we lack authority to consider the appeal and must dismiss the appeal." *Id.*

"Rule 74.01(b) provides an exception to this general rule by permitting the trial court to designate as final a judgment 'as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.'" *Id.* "However, the trial court's certification of a judgment as final is not conclusive because we must independently determine if such judgment actually qualifies as a final judgment." *Id.* "In so doing we look to the judgment's content, substance, and effect." *Id.* In order for certification to be proper, the trial court's decision must have completely disposed of a claim. *Lunceford v. Houghtlin*, 326 S.W.3d 53, 61 (Mo.App. W.D.2010). "A judgment that resolves fewer than all legal issues as to any single claim is not final despite the trial court's designation under Rule 74.01(b)." *Atkins v. Jester*, 309 S.W.3d 418, 424 (Mo.App. S.D.2010) (internal quotation omitted). Accordingly, to determine whether we have the authority to entertain this appeal, we must consider whether the dismissal of Dewey & LeBoeuf's counterclaim for declaratory judgment resolved an entire claim in this case.

Dewey & LeBoeuf's counterclaim sought declaratory relief. "Under section 527.010, trial courts have the 'power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.'" *Van Dyke v. LVS Bldg. Corp.*, 174 S.W.3d 689, 692 (Mo.App. W.D.2005). "An action pursuant to this section is *sui generis*, neither legal nor equitable, but its historical affinity is equitable and such actions are governed by equitable principles." *Preferred Physicians Mut. Mgmt. Group, Inc. v. Preferred Physicians Mut. Risk Retention Group*, 916 S.W.2d 821, 823 (Mo.App. W.D.1995). Because § 527.010 provides that declaratory relief is to be remedial in nature, "Missouri courts have long held that declaratory relief power does not abolish or provide an additional existing remedy but instead addresses a deficiency or bridges a superfluity in the law." *Van Dyke*, 174 S.W.3d at 692. "The purpose of a declaratory judgment is to give parties relief from uncertainty and insecurity and to reduce multiple lawsuits." *Id.* (internal quotation omitted).

Accordingly, "declaratory judgment power 'is not to be invoked where an adequate remedy already exists.'" *Id.* (quoting *Preferred Physicians*, 916 S.W.2d at 823; *see also Lane v. Lensmeyer*, 158 S.W.3d 218, 223 (Mo. banc 2005) ("An action for declaratory judgment is inappropriate when the issue can be raised by some other means.")). "For the purposes of this rule, an adequate remedy exists if the plaintiff could assert the issues sought to be declared as a defense in an action brought by the defendant." *Preferred Physicians*, 916 S.W.2d at 824. Moreover, "[w]here the alternative remedy

is a pending suit, there is even greater justification to apply the rule against allowing declaratory judgment actions." *Planned Parenthood of Kansas v. Donnelly,* 298 S.W.3d 8, 12 (Mo.App. W.D.2009). "[I]t serves no sensible end to allow a defendant to seek a declaration by the trial court that he has a meritorious defense to the pending action." *Preferred Physicians,* 916 S.W.2d at 824 (internal quotation omitted). Therefore, "a declaratory judgment action will not lie where the declaration is being sought to defend against an action brought against the party seeking declaratory relief." *Van Dyke,* 174 S.W.3d at 693 (internal quotation omitted). "This rule is especially applicable where the issues sought to be declared have been asserted as a defense in the same litigation." *Id.*

In the case at bar, all of the claims asserted by Dewey & LeBoeuf in its counterclaim were simply defenses that could be, and were, asserted against the claims brought in the Liquidators' petition. While Dewey & LeBoeuf attempts to argue that an adequate remedy was not available through the assertion of affirmative defenses because it sought injunctive relief prohibiting future actions against it, the affirmative defenses of lack of standing or lack of authority, if successful, would have the same preclusive effect on future claims under the principles of *res judicata* and/or collateral estoppel. As Dewey & LeBoeuf clearly had an adequate remedy in the form of defenses in an existing action, on the face of the pleadings, it failed to state a claim for declaratory relief.

Despite the dismissal of Dewey & LeBoeuf's counterclaim, the defenses asserted in that counterclaim and sufficient remedy therefore are still alive in the underlying action in the form of affirmative defenses. Accordingly, the trial court's decision to dismiss the counterclaim did not have the effect of completely disposing of those claims; it simply determined that one form of remedy was unavailable.

Since the judgment did not completely resolve any one legal claim, the judgment is not final, and the trial court erred in certifying this matter for appeal. The appeal is, therefore, dismissed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

All concur.